UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CHARLES GADSDEN and BARBARA GADSDEN, | Civil Action No.: 4:06-cv-3342-RBH |
| Plaintiffs, | |
| v. | **ORDER** |
| FLORENCE COUNTY SCHOOL DISTRICT FOUR, | |
| Defendant. | |

Pending before the court is Defendant's [Docket Entry #22] motion for summary judgment.[1]  Plaintiffs' complaint alleges causes of action for breach of an employment contract, violations of 42 U.S.C. § 1983, and loss of consortium.

## Background

Plaintiff Charles Gadsden was employed by Florence County School District Four ("District") as Superintendent for a term commencing on July 1, 2004, and ending June 30, 2007.  Dr. Gadsden's wife, Barbara Gadsden, is also a party to this lawsuit.[2]

Dr. Gadsden's employment contract with the District sets forth the following provisions with regard to the Superintendent's duties in relation to the Board:

> The Superintendent shall have charge of the administration of schools under the direction of the Board.  He shall be the Chief Executive Officer of the District; shall direct and assign teachers and other employees under his supervision; shall organize, reorganize and arrange the administrative,

---

[1]  Pursuant to Local Rule of Civil Procedure 7.08, the district court may determine motions without a hearing.

[2]  Plaintiffs state that Barbara Gadsden's claims are limited to breach of contract and loss of consortium.

> instructional and business staff, as best serves the District; shall select all personnel subject to the approval of the Board; shall from time to time suggest regulations, rules, and procedures deemed necessary for the well ordering of the School District; and in general, perform all duties as may be prescribed by the Board from time to time. The Board, individually and collectively, shall promptly refer all criticism, complaints and suggestions called to its attention to the Superintendent for study and recommendations. The Superintendent shall have the right to attend all Board meetings and all Board and citizen community meetings, serve as ex-officio member of all school board committees, and provide administrative recommendations on each item of business considered, except as otherwise provided herein.

[Professional Employment Agreement, at ¶2, Docket Entry #22-4].

Plaintiffs allege that members of the School District Board of Trustees ("Board") interfered with Dr. Gadsden's employment and undermined his authority as Superintendent in an effort to make him resign from the position. Specifically, Plaintiffs allege that the Board: 1) suspended the District's student transfer policy; 2) usurped Dr. Gadsden's authority to deal with personnel matters by meeting directly with District employees without his or the Principal's permission; 3) failed to unanimously support Dr. Gadsden's efforts to lobby the General Assembly for additional funding; 4) attempted to influence Dr. Gadsden's assignments of personnel; 5) interviewed candidates for employment even after hearing Dr. Gadsden's recommendation regarding hiring; 6) voted against Dr. Gadsden's personnel recommendations; and 7) defamed Dr. Gadsden's character and integrity by questioning his handling of the District's food service account.

In July of 2006, Dr. Gadsden and the Board met with representatives from the South Carolina School Boards Insurance Trust in an attempt to improve their working relationship. Following the meeting between Dr. Gadsden, the Board, and representatives from the School

Boards Insurance Trust, Dr. Gadsden wrote the Board requesting a grievance hearing.[3] In response, the Board stated that because Dr. Gadsden was Superintendent, he did not have a right to a grievance hearing under District policy. On or about August 3, 2006, during a Board meeting, Dr. Gadsden resigned as Superintendent.

Dr. Gadsden brought this lawsuit alleging four causes of action. In the first cause of action, Dr. Gadsden and his wife, Barbara Gadsden, allege that they suffered damages when the District breached the terms of Dr. Gadsden's employment contract. Plaintiffs' second cause of action is brought under 42 U.S.C. § 1983 and alleges that the District violated Dr. Gadsden's right to free speech under the First Amendment when it denied Dr. Gadsden's request for a grievance hearing. Plaintiffs' third cause of action, also brought under 42 U.S.C. § 1983, alleges an unlawful taking without due process under the Fourteenth Amendment. Plaintiffs' fourth cause of action alleges loss of consortium on behalf of Barbara Gadsden.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo*

---

[3] From the record before the court, it does not appear that Dr. Gadsden was facing termination, threat of termination, or any other adverse employment action. Dr. Gadsden testified that he wished to grieve: 1) the way the Board was interfering with his ability to perform his job; 2) the fact that Board members would "go and talk with individual teachers without complying with [his] contract;" 3) suspension of the District's student transfer policy; and 4) how the Board handled personnel issues. [Deposition of Charles Gadsden, at 25-26, Docket Entry #22-5].

3

*Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

### Discussion

**I.     § 1983 Claim Based On Unlawful Taking**

Dr. Gadsden alleges that his resignation constituted a constructive discharge from his employment as Superintendent and that such amounted to a taking of his "liberty" interest without due process of law under the Fourteenth Amendment. [Complaint, ¶¶ 28-30, Docket Entry #1].

The United States Supreme Court has broadly construed the definition of "liberty" and "property" with regard to rights guaranteed by the due process clause of the Fifth and Fourteenth Amendments to the Constitution. The "liberty" guaranteed by the due process

4

clause includes not only the "freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972). An individual also has a "liberty" interest in his standing and reputation in the community, and in being free from stigma or disability that forecloses the freedom to take advantage of other employment opportunities. *Roth*, 408 U.S. at 573.

The "property" interest protected by the due process clause extends beyond actual ownership of real estate, chattels, or money. *Id*. at 571-72. For example, the Supreme Court has held that a person receiving welfare benefits under statutory and administrative standards defining eligibility has a property interest in the continued receipt of those benefits. *See Goldberg v. Kelly*, 397 U.S. 254 (1970). With regard to public employment, the Court has held that college professors with tenure and public employees under contract have property interests in their continued employment. *See Slochower v. Board of Education*, 350 U.S. 551 (1956); *Wieman v. Updegraff*, 344 U.S. 183 (1952).

Plaintiffs' complaint does not allege that Dr. Gadsden was deprived of any "property" interest without due process of law. Rather, Plaintiffs' complaint alleges that "[t]he Defendant's actions constitute a taking of *liberty* without due process of law." [Complaint, ¶ 29, Docket Entry #1]. Likewise, Plaintiffs' Brief in Response to Defendant's Motion for Summary Judgment also fails to allege a deprivation of any "property" interest, but refers to a taking of "liberty" without due process of law. [Brief in Response, at pg. 4, Docket Entry

5

#26]. Despite Plaintiffs' repeated references to "liberty" interests, as opposed to "property" interests, the substance of Dr. Gadsden's claim is that he was deprived of his right to continued employment - a property interest - as a result of his alleged constructive discharge.

To establish a due process claim, a plaintiff must show that he has a constitutionally protected liberty or property interest and that he has been deprived of that protected interest by some form of state action. *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988). In this case, Dr. Gadsden clearly has a constitutionally protected property interest in continued employment as Superintendent pursuant to the terms of his employment contract with the District. However, as discussed more fully below, Dr. Gadsden has failed to establish that he was deprived of his property interest by some form of state action.

The Fourth Circuit Court of Appeals has stated that "if [the plaintiff] resigned of his own free will even though prompted to do so by events set in motion by his employer, he relinquished his property interest voluntarily and thus cannot establish that the state 'deprived' him of it within the meaning of the due process clause." *Stone*, 855 F.2d at 173. "If, on the other hand, [the plaintiff's] 'resignation' was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause."[4] *Id*.

Under federal law, constructive discharge occurs when the employer deliberately makes the employee's working conditions so intolerable that he is compelled to resign. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). In order to prove constructive

---

[4] Neither party has briefed or analyzed the facts of this case in the context of constructive discharge under Fourth Circuit precedent.

discharge, the plaintiff must prove two elements: 1) deliberateness of the employer's action; and 2) intolerability of the working conditions. *Bristow*, 770 F.2d at 1255.

Deliberateness is found if the employer's actions were intended to force the employee to resign.[5] *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995). The Fourth Circuit requires "proof of the employer's specific intent to force an employee to leave." *Bristow*, 770 F.2d at 1255. "Intent can be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions." *Id*. Intent may also be shown by evidence that the employee's resignation was the reasonably foreseeable consequence of the employer's conduct. *Martin*, 48 F.3d at 1355.

Intolerability of working conditions is determined using the objective standard of "whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255.

> [T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

---

[5] The majority of the circuits focus on the effect an employer's actions have on an employee and whether a reasonable person in the employee's position would have felt compelled to resign. *See, e.g. Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360-61 (2d Cir. 1993); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987); *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987); *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir. 1986); *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986); *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887-88 (3d Cir. 1984); *Bourque v. Powell Elec. Manuf. Co.*, 617 F.2d 61, 65 (5th Cir. 1980).
   The Fourth Circuit Court of Appeals takes the minority view, which requires the plaintiff to also prove that "the actions complained of were intended by the employer as an effort to force the employee to quit." *Martin*, 48 F.3d at 1354.

*Id*.

With regard to the deliberateness inquiry, there is arguably a genuine issue of material fact as to whether the Board's actions - allegedly undermining Dr. Gadsden's authority and micro-managing the District - were intended to force Dr. Gadsden to resign. Dr. Gadsden testified that during a Board meeting he suggested to the Board that they buy out his contract because the Board "obviously [did not] want [him] to run [the] District." [Deposition of Charles Gadsden, at 24, Docket Entry #22-5]. The record indicates that the Board was fully aware of Dr. Gadsden's displeasure with the working relationship between himself and the Board. Specifically, Dr. Gadsden testified that on many occasions he expressed his dissatisfaction to the Board concerning their interference with his job as Superintendent. Arguably, it was reasonably foreseeable that if the Board continued to allegedly undermine Dr. Gadsden's authority and micro-manage the District, Dr. Gadsden would eventually resign out of frustration.

Dr. Gadsden's unlawful taking claim based on constructive discharge fails for two reasons. First, Dr. Gadsden has failed to establish that his working conditions were so intolerable that a reasonable person would have felt compelled to resign. *See Bristow*, 770 F.2d at 1255. Dr. Gadsden resigned during a Board meeting after his recommendation on a personnel decision was not followed. Dr. Gadsden testified with regard to his resignation as follows:

> I told the Board . . . for the last two years you've been undermining me, you've been usurping my authority, you've been micro managing, so it's a compilation of things after two years and I don't feel as though I can continue to work in this District. Obviously, y'all don't want me as

8

>   Superintendent.  You want to run the District, therefore, I resign.  It was spontaneous.  Effective immediately.

[Deposition of Charles Gadsden, at 105, Docket Entry #22-4].  The working conditions that allegedly prompted Dr. Gadsden's resignation may have constituted a stressful and difficult working environment.  However, those conditions, as described by Dr. Gadsden, were not so intolerable as to compel a reasonable person to resign.

This case is somewhat analogous to *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180 (4th Cir. 2004).  In *Honor*, the plaintiff described his working environment as "the most miserable [ ] and professionally unfulfilling of his life." 383 F.3d at 187.  The plaintiff's complaints revolved around disagreements with his supervisor and others about the mission and functioning of Booz Allen's human resources department. *Id*.  The Fourth Circuit, in affirming summary judgment, stated "[t]here is no question that Honor's workplace was filled with professional and, in some cases, personal tensions.  The HR department did not operate in a manner Honor considered acceptable and he viewed Callahan as the central obstacle." *Id*.  However, the Court found that the plaintiff's "mere frustration with his inability to accomplish his professional goals does not constitute an intolerable work condition for the purposes of establishing a constructive discharge." *Id*.; *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (holding that the employee's allegations that supervisors yelled at her, told her she was a poor manager, gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back did not establish objectively intolerable working conditions as required to support a claim of constructive discharge under federal law); *cf. Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995) (finding

9

genuine issue of material fact as to intolerability of work conditions where supervisor and others subjected employee to daily racial epithets about his Iranian origin and tried to embarrass him in public, resulting in an ulcer and his eventual resignation).

Dr. Gadsden merely describes a working environment in which he did not receive the respect and authority to which he thought he was entitled. The court cannot allow Dr. Gadsden's subjective perceptions to govern his claim for constructive discharge. *See Bristow*, 770 F.2d at 1255. Dr. Gadsden's mere frustration with his inability to accomplish his professional goals because of what he believed to be the Board's interference does not constitute an intolerable working condition under federal law.[6] *See Honor*, 383 F.3d at 187. As the Fourth Circuit stated in *Bristow*, "[e]very job has its frustrations, challenges and disappointments; these inhere in the nature of work." 770 F.2d at 1255. "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). Dr. Gadsden has presented insufficient evidence to create a genuine issue of material fact as to the intolerability of his working conditions. From the record before it, the court cannot conclude that a reasonable person would not have continued to work under the conditions described by Dr. Gadsden.

Second, in addition to failing to create a genuine issue of material fact as to the intolerability of his working conditions, Dr. Gadsden has not alleged or argued that his

---

[6] Dr. Gadsden's employment contract with the District provided: "The Superintendent shall have charge of the administration of schools under the direction of the Board . . .shall select all personnel subject to the approval of the Board . . . perform all duties as may be prescribed by the Board." [Professional Employment Agreement, at ¶2, Docket Entry #22-4].

resignation was the product of misrepresentation, duress or coercion. *See Stone*, 855 F.2d at 174. Resignations have been found to constitute constructive discharge where the resignation was obtained by either: 1) misrepresentation or deception; or 2) duress or coercion. *Id*. "Under the misrepresentation theory, a resignation may be found involuntary if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation." *Id*. A resignation may be found involuntary under the duress or coercion theory "if on the totality of the circumstances it appears that the employer's conduct in requesting resignation effectively deprived the employee of free choice in the matter. *Id*.

In *Stone v. University of Maryland Medical System Corp.*, the Fourth Circuit concluded that a surgeon's resignation was voluntary after his superiors informed him that if he did not resign the Medical Examination Committee would suspend his clinical privileges and commence proceedings for his removal. 855 F.2d at 175. In *Zepp v. Rehrmann*, the Fourth Circuit concluded that a deputy sheriff's resignation after an inmate's death was voluntary when the County demanded that the deputy resign and threatened not to represent him in any civil lawsuit relating to the inmate's death. 79 F.3d 381, 387 (4th Cir. 1996).

In rejecting the due process/constructive discharge claims in *Stone* and *Zepp*, the Fourth Circuit noted that each plaintiff had a choice in the matter, that is, each plaintiff freely and voluntarily chose to resign. Importantly, the plaintiffs in *Stone* and *Zepp* had stronger due process claims than Dr. Gadsden. In *Stone* and *Zepp*, the plaintiffs' resignations were obtained by the employer after the employer gave the plaintiffs a choice between resignation and certain unpleasant consequences. In this case, no one requested that Dr. Gadsden resign. Dr. Gadsden, like the plaintiffs in *Stone* and *Zepp*, had a choice about whether to resign.

However, Dr. Gadsden's choice was unencumbered with the unpleasant circumstances faced by the plaintiffs in *Stone* and *Zepp*.

In sum, because Dr. Gadsden has failed to present sufficient evidence to create a genuine issue of material fact as to the intolerability of his working conditions, he cannot prove that his resignation was so involuntary that it amounted to a constructive discharge under federal law. Furthermore, there is no allegation or argument, nor could one be made, that Dr. Gadsden's resignation was obtained through misrepresentation, duress or coercion. Dr. Gadsden has not presented sufficient evidence to create a genuine issue of material fact as to whether the state deprived him of any property interest within the meaning of the due process clause. *See Stone*, 855 F.2d at 173. Accordingly, Dr. Gadsden's § 1983 claim based on an unlawful taking is dismissed.

## II.    § 1983 Claim Based On First Amendment Violation

Dr. Gadsden alleges that the District violated his right to free speech when it denied his request for a grievance hearing.[7] The District first argues that under District policy, the Superintendent is not entitled to a grievance hearing. The District also notes that it never prohibited Dr. Gadsden from exercising his right to free speech and that Dr. Gadsden was never prevented from speaking to the public or the Board about his concerns. In fact, Dr.

---

[7]    Although Dr. Gadsden's Complaint frames his First Amendment claim as being based solely on the Board's failure to provide him with a grievance hearing, the cases cited by the parties involve plaintiff-employees who were retaliated or discriminated against after engaging in protected speech on matters of public concern. Dr. Gadsden does not claim that he was retaliated or discriminated against for engaging in protected speech on a matter of public concern. Rather, Dr. Gadsden claims that his First Amendment rights were violated simply because he was denied a particular forum - a formal grievance hearing before the Board. [Complaint, at ¶¶ 24-27, Docket Entry #1]. Even assuming that Dr. Gadsden engaged in protected speech on a matter of public concern, nowhere does Dr. Gadsden allege or argue that he was constructively discharged from his position as Superintendent for engaging in any protected speech.

Gadsden testified that he expressed "on many, many occasions how [he] felt about [the Board] micro managing the District and not allowing him to do the job that [he] was hired to do." [Deposition of Charles Gadsden, at 23, Docket Entry #22-5]. The District also argues that the issues Dr. Gadsden wished to raise at the grievance hearing were matters of private self interest, rather than matters of public concern, and therefore did not implicate any First Amendment concerns.

Dr. Gadsden has failed to provide any authority for the proposition that denial of a grievance hearing could constitute a First Amendment violation. To the contrary, in *Phelps v. Washburn Univ. of Topeka*, the plaintiffs alleged that defendants' denial of the grievance procedure violated plaintiffs' First Amendment rights. 632 F. Supp. 455, 461 (D. Kan. 1986). The court dismissed plaintiffs' claim finding that even though the plaintiffs had a First Amendment right of free speech, the denial of a grievance procedure is not in itself a free speech interest. *Phelps*, 632 F. Supp. at 461.

Dr. Gadsden has also not cited, nor provided the court, any District policy, contractual provision, or South Carolina statute that could arguably entitle him to a grievance hearing before the Board. There is simply insufficient evidence that the District ever hindered Dr. Gadsden's ability to freely express himself either to the public or the Board itself. The record indicates that Dr. Gadsden regularly voiced his opinions regarding the District and the Board. Dr. Gadsden has failed to establish that the District violated his First Amendment rights. Therefore, Dr. Gadsden's § 1983 claim based on violations of the First Amendment is dismissed.

**III.    State Law Claims**

The only remaining causes of action are state law claims.  In particular, the remaining state law claims are Dr. Gadsden's breach of contract claim and Barbara Gadsden's third party beneficiary claim and loss of consortium claim.[8]  The United States Court of Appeals for the Fourth Circuit has held that "the federal courts are courts are courts of limited jurisdiction." *McQuillen v. National Cash Register Co.*, 112 F.2d 877, 881 (4th Cir. 1940).  This court can decline to continue the action as to any pendent state claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Because this court has dismissed all claims over which it had original jurisdiction, the court finds that the remaining state law causes of action should be dismissed for want of jurisdiction.  The statute of limitations on the state common law causes of action was tolled while the claims were pending in this court, and will continue to be tolled for a period of thirty (30) days after the date of this Order.  28 U.S.C. § 1367(d).  Therefore, pursuant to 28 U.S.C. § 1367(d) and *Jinks v. Richland County, S.C.,* 538 U.S. 456 (2003), Plaintiffs have **thirty (30) days** from the date this Order to commence their state common law claims in state court.

---

[8]    Because the court declines to exercise jurisdiction over any of the pendent state law claims, the court expressly refuses to comment as to the viability of Barbara Gadsden's third party beneficiary claim or her loss of consortium claim.  Such is a matter better left to the South Carolina state courts.

However, it should be noted that this court's finding that Dr. Gadsden was not constructively discharged with regard to his § 1983 claim does not foreclose his ability to proceed on a state law breach of employment contract claim.  In determining whether a plaintiff was constructively discharged under federal law and, more specifically, Fourth Circuit precedent, the inquiry is focused on the deliberateness of the employer's actions and the intolerability of the working conditions. *See Bristow*, 770 F.2d at 1255.  In contrast, under South Carolina law, "[w]hen an employee contracts to fill a particular position any material change in duties or significant reduction in rank constitutes constructive discharge which, *if unjustified*, is a breach of the contract." *Tracey v. Sconnix Broad. of South Carolina, Inc.*, 325 S.E.2d 542, 544 (S.C. 1985).  Thus, a different standard applies to constructive discharge in the context of federal claims than that applied to South Carolina state law breach of employment contract claims. *See Jacobsen v. Towers Perrin Forster & Crosby, Inc.*, No. RBD 05-2983, 2006 WL 3147732, at *3 (D. Md. Oct. 31, 2006) (recognizing differing standards for evaluating constructive discharge claims under federal law and Maryland state law).

## Conclusion

For the reasons stated above, Defendant's [Docket Entry #22] motion for summary judgment is **GRANTED in part and DENIED in part**. Summary judgment is **GRANTED** as to Dr. Gadsden's second and third causes of action (First Amendment and Due Process claims brought under 42 U.S.C. § 1983). Summary judgment is **DENIED** to the extent this court declines to exercise jurisdiction over Plaintiffs' pendent state law claims. Plaintiffs' claims brought under 42 U.S.C. § 1983 are hereby **DISMISSED with prejudice**. Pursuant to 28 U.S.C. § 1367, Plaintiffs' state law claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction. Plaintiffs have **thirty (30) days** from the date this Order to commence their state common law claims in state court.

**IT IS SO ORDERED.**

Florence, SC  
February 4, 2008

s/R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge